UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:16-cv-00276-TBR

MAKI JUILLERAT                                                                                            PLAINTIFF

v.

UNITED STATES OF AMERICA, *et. al.*                                                      DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants Louisville/Jefferson County Metro Government ("Louisville Metro"), Louisville Mayor Greg Fischer ("Mayor Fischer"), Louisville Metro Police Department ("LMPD"), and LMPD Chief of Police Steve Conrad's ("Chief Conrad") Motion to Dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). [DN 7.] Plaintiff has responded. [DN 19.] Defendants have replied. [DN 26.] Fully briefed, this matter is now ripe for adjudication. For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND

The relevant facts as set out in the complaint [DN 1-1] and taken as true are as follows. Plaintiff Maki Juillerat ("Juillerat") is a United States Army veteran who, in March 2015, was receiving treatment at the Robley Rex Veterans Affairs Medical Center ("RRVAMC") in Louisville, Jefferson County, Kentucky. [DN 1-1 at ¶¶ 2–3; 23.] Juillerat was obtaining treatment for Post-Traumatic Stress Disorder, which was the result of his seventeen years of military service. [*Id.* at ¶ 31.] On or around March 20, 2015, Juillerat had a counseling session with Dr. Mary Sweeny, during which Juillerat and Dr. Sweeny discussed confidential matters, including Juillerat's mental status, judgment and insight, and risk factors. [*Id.* at ¶¶ 32–36.] Additionally,

1

Juillerat and Dr. Sweeny discussed a recent encounter Juillerat had with Louisville Metro Police Department ("LMPD") Officer Greg Mudd during a traffic stop and during which Officer Mudd issued Juillerat a citation. [*Id.* at ¶¶ 37, 40.] During the conversation with Dr. Sweeny, Juillerat reported that he had "'thoughts' of shooting Officer Greg Mudd," but further stated that he did not plan to carry out such a shooting. [*Id.* at ¶¶ 38–39.] Juillerat also informed Dr. Sweeny about an upcoming court appearance that was scheduled as a result of the citation. [*Id.* at ¶ 40.] Juillerat told Dr. Sweeny that if his thoughts "progressed further toward action," he would call emergency services or go to a hospital. [*Id.* at ¶ 41.]

On or around March 27, 2015, Sonny Hatfield, a Veterans Outreach Specialist at RRVAMC, attended a risk management meeting where he learned of Juillerat's statements regarding his thoughts about Officer Mudd. [*Id.* at ¶¶ 5; 42–43.] Upon learning this information, Hatfield sent an email to the LMPD stating "I was made aware after viewing a note that an Officer Mudd was threatened 'to be shot' by a patient at the VA. The person in question is Maki James Juillerat." [*Id.* at ¶¶ 44–45.] On or around March 31, 2015, Hatfield noted the sending of this email in Juillerat's file. [*Id.* at ¶ 46.] Hatfield wrote that he " '[i]nformed Off. Jack that this writer was the second hand report' and he 'did not hear the 'HI' (comment) directly.' " [*Id.* at ¶ 47.] Hatfield additionally provided LMPD with Dr. Sweeny's telephone number and noted this in Juillerat's file as well. [*Id.* at ¶¶ 48–49.] The LMPD did not attempt to contact Dr. Sweeny, however. [*Id.* at ¶ 50.] Also on or around March 31, 2015, Dr. Sweeny made an entry in Juillerat's file stating "Patient never said anything about killing the officer or anybody else," that "He (Patient) said he 'thought about shooting' the cop," but that Juillerat "went on to say he had no intentions of doing this." [*Id.* at ¶¶ 51–54.] Dr. Sweeny also wrote that Juillerat had promised

to "go to the ER or call 911 if he felt he was losing control over his impulses to hurt self or others." [*Id.* at ¶ 55.]

On April 2, 2015, Juillerat attended the hearing on his traffic citation, and the next day, on April 3, an electronic arrest warrant was issued charging Juillerat with terroristic threatening. [*Id.* at ¶¶ 56–57.] The arrest warrant was executed on April 5, 2015 by an unnamed LMPD officer, who arrested Juillerat and took him into custody. [*Id.* at ¶¶ 58–59.] Juillerat remained in LMPD custody until being discharged on April 15, 2015. [*Id.* at ¶ 60.] On May 7, 2015, the terroristic threatening charge was dismissed on the merits "on grounds that the charge was 'insufficient on its face to be terroristic threatening.'" [*Id.* at ¶¶ 61–62.]

Plaintiff originally filed the instant tort action in Kentucky state court on or around April 5, 2016. [DN 1.] Among several other defendants, Plaintiff brought suit against Sonny Hatfield and Jamie Watts, employees of the Robley Rex Veterans Affairs Medical Center, a facility operated by the Department of Veterans Affairs. [*Id.*] Pursuant to § 2679(d)(1) of the Federal Employees Liability Reform and Tort Compensation Act of 1988, (the "Westfall Act"), United States Attorney John E. Kuhn, Jr. certified that Hatfield and Watts "were acting within the scope of their employment with the United State Department of Veterans Affairs at the time of the conduct alleged in the complaint." [DN 1 at 2.] Hatfield and Watts were accordingly dismissed from the action, and the United States was substituted as the proper party. [*Id.*] It removed this case to the United States District Court for the Western District of Kentucky on April 16, 2016. [*Id.* at 3.]

STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). When considering a Rule 12(b)(6) motion to dismiss, the court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Iqbal*, 556 U.S at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x. 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

DISCUSSION

In this action, Plaintiff asserts several state law tort claims against multiple defendants. Against the four Defendants bringing this motion, Defendants Louisville Metro, Mayor Fischer, the LMPD, and Chief Conrad (collectively, "Defendants"), Plaintiff asserts negligence, gross negligence, intentional infliction of emotional distress, negligent infliction of emotional distress,

and false imprisonment. [DN 1-1 at 11–22.] Of the Defendants who are public employees, Plaintiff asserts his claims against these individuals both in their official and individual capacities. [*Id.* at ¶ 21.] Plaintiff additionally alleges that Defendants are vicariously liable on each of these claims under the doctrine of *respondeat superior*. [*Id.* at ¶¶ 78; 94; 113; 127; 135.]

In the instant motion, Defendants have moved to dismiss all claims against them on the grounds that Plaintiff has not stated a claim upon which relief can be granted under Rule 12(b)(6). [DN 7.] Defendants specifically allege 1) the official capacity claims and the claims against Louisville Metro are barred by the doctrine of sovereign immunity, 2) the LMPD is not an entity capable of being sued, and that 3) the claims against Chief Conrad in his individual capacity are improper under both the theories of vicarious liability and qualified immunity. The Court will address each of these arguments, and Plaintiff's arguments in response, in turn.

I. **Sovereign Immunity**

Defendants contend that the claims against both Louisville Metro and against Mayor Fischer and Chief Conrad in their official capacities are all barred by the doctrine of sovereign immunity under Kentucky law. Plaintiff made no arguments to refute these contentions in his response. [*See* DN 19.] The Court agrees with Defendants.

A. **Louisville Metro**

The Court agrees that Louisville Metro is entitled to sovereign immunity, and therefore that all claims against it must be dismissed. In *Jewish Hospital Healthcare Services, Inc. v. Louisville/Jefferson County Metro Government*, the Court of Appeals of Kentucky explained:

> "Immunity from suit is a sovereign right of the state." *Foley Construction Company v. Ward,* 375 S.W.2d 392, 393 (Ky. 1963). "The General Assembly may, by law, direct in what manner and in what courts suits may be brought against the Commonwealth." Kentucky Constitution, Section 231. A county "is a political subdivision of the Commonwealth as well, and as such is an arm of the state government. It, too, is clothed with the same sovereign immunity." *Cullinan*

5

> *v. Jefferson County,* 418 S.W.2d 407, 408 (Ky. 1967), *overruled on other grounds by Yanero v. Davis,* 65 S.W.3d 510, 527 (Ky. 2001). Therefore, absent an explicit statutory waiver, Metro Government is entitled to sovereign immunity.

270 S.W.3d 904, 907 (Ky. Ct. App. 2008). In 2013, the Court of Appeals further stated "KRS 67C.101(2)(e) accords a consolidated local government, such as Louisville Metro, the same sovereign immunity accorded to counties, their agencies, officers, and employees." *Transit Auth. of River City v. Bibelhauser*, 432 S.W.3d 171, 173 (Ky. Ct. App. 2013) (citing *Jewish Hosp. Healthcare Servs., Inc.*, 270 S.W.3d at 907). *See also Louisville/Jefferson Cty. Metro Gov't v. Cowan*, No. 2015-CA-000600-MR, 2016 WL 5319295, at *2 (Ky. Ct. App. Sept. 23, 2016) ("Because Louisville Metro is essentially an arm of the Commonwealth . . . Louisville Metro is entitled to sovereign immunity . . . and is thus absolutely immune from suit.") Plaintiff has not attempted to identify any "explicit statutory waiver," and this Court finding none, all of Plaintiff's state-law claims against Louisville Metro, including those premised upon vicarious liability, are barred by the doctrine of sovereign immunity and are therefore dismissed.

### B.     Mayor Fischer and Chief Conrad

Defendants further contend that the claims Plaintiff asserts against Mayor Fischer and Chief Conrad in their official capacities are barred by the doctrine of sovereign immunity. The Court agrees. The Supreme Court of Kentucky has explained that

> "Official immunity" is immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions. It rests not on the status or title of the officer or employee, but on the function performed. *Salyer v. Patrick,* 874 F.2d 374 (6th Cir. 1989). Official immunity can be absolute, as when an officer or employee of the state is sued in his/her representative capacity, in which event his/her actions are included under the umbrella of sovereign immunity . . . Similarly, when an officer or employee of a governmental agency is sued in his/her representative capacity, the officer's or employee's actions are afforded the same immunity, if any, to which the agency, itself, would be entitled.

*Yanero v. Davis*, 65 S.W.3d 510, 521–22 (Ky. 2001). The Supreme Court of Kentucky has further clarified that, when defendants are "specifically sued 'in their official capacities' . . . each is cloaked with the same immunity as the government or agency he/she represents." *Schwindel v. Meade Cty.*, 113 S.W.3d 159, 169 (Ky. 2003) (citing *Yanero*, 65 S.W.3d at 522). *See also Jones v. Cross*, 260 S.W.3d 343, 345 (Ky. 2008) ("Official immunity protects governmental officials or employees from tort liability for performance of their discretionary functions . . . Furthermore, official immunity is absolute when an official's or an employee's actions are subject to suit in his official capacity."); *St. Matthews Fire Prot. Dist. v. Aubrey*, 304 S.W.3d 56, 60 (Ky. Ct. App. 2009) ("Thus, the defendant officers, having been sued only in their official capacities, are afforded the same immunity as that to which Jefferson County is itself entitled.")

The Sixth Circuit has further explained that "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 68 (1989) ("Matthews sued Chief Jones only in his official capacity as the Chief of the Jefferson County Police Department.")) Courts this District have recognized the same principle, and have explained that "[o]fficial-capacity suits ... 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.' " *Marshall v. O'Connell*, No. 3:13-CV-802-H, 2014 WL 5366112, at *4 (W.D. Ky. Oct. 21, 2014) (quoting *Kentucky v. Graham,* 473 U.S. 159,166 (1985); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n. 5 (1978)). The court in *Marshall* concluded, therefore, that the "[p]laintiffs' official-capacity claims against" various county officials, including Chief "Conrad . . . are actually against Louisville Metro." *Id.*

The state law claims Plaintiff alleges against Mayor Fischer and Chief Conrad in their official capacities are therefore effectively against Louisville Metro. As the Court concluded above, Louisville Metro is entitled to sovereign immunity from such claims. The Court finds that Mayor Fischer and Chief Conrad are cloaked in the same immunity, and the state law claims Plaintiff makes against them in their official capacities are accordingly dismissed.[1]

## II.     LMPD as an Entity Capable of Being Sued

The Sixth Circuit has made clear that "the [Jefferson County] Police Department is not an entity which may be sued," and rather that "Jefferson County is the proper party to address th[ose] allegations of [a plaintiff's] complaint." *Matthews*, 35 F.3d at 1049. *See also Marshall v. O'Connell*, No. 3:13-CV-802-H, 2014 WL 5366112, at *2 (W.D. Ky. Oct. 21, 2014) ("Plaintiff names the Louisville Metro Police Department as a defendant. However, that entity is not one capable of being sued. The proper party is the Louisville Jefferson County Metro Government."); *Reyes v. Salsman*, No. 3:15-CV-00587-GNS-DW, 2016 WL 247582, at *2 (W.D. Ky. Jan. 20, 2016) ("It is well established under Sixth Circuit precedent that the LMPD is not a proper party to this lawsuit . . . Thus, Louisville Metro is the proper party to address Plaintiff's claims, and all claims against the LMPD are hereby dismissed.").

The Court finds, therefore, that LMPD is not the proper entity to address Plaintiff's claims. Therefore, all claims against LMPD are dismissed. Rather, Louisville Metro is the appropriate entity. As the Court explained above, Louisville Metro is entitled to sovereign immunity on all of Plaintiff's claims. Therefore, it, too, is shielded from liability on these claims.

---

[1] Defendants state in their motion to dismiss that "Plaintiff has named Mayor Greg Fischer as a party to this lawsuit in his official capacity only." [DN 7 at 2.] On the second page of the Complaint, Plaintiff writes that Mayor Fischer is a defendant "(IN HIS OFFICIAL CAPACITY AS MAYOR)." Plaintiff also included a statement on another page that "Plaintiff sues all public employee Defendants in their official and individual capacities." [DN 1-1 at 3; 6.] The Court views Mayor Fischer as an elected official, rather than a "public employee," and therefore construes the Complaint as suing Mayor Fischer in his official capacity only, thereby construing all claims against him as dismissed. If Plaintiff intended otherwise, Plaintiff is directed to seek leave to file an amended complaint.

### III. Chief Conrad in his Individual Capacity

To the extent Plaintiff alleges his claims against Chief Conrad in his individual capacity, Defendants argue such claims also must be dismissed. [DN 7 at 3–5.]

#### A. Vicarious Liability

With respect to the claims of negligence, gross negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, and false imprisonment, Plaintiff contends that Chief Conrad is "liable under the doctrine of *respondeat superior.*" [DN 1-1 at ¶¶ 78, 94, 113, 127, 135.][2] In their motion to dismiss, Defendants contend that all claims of vicarious liability against Chief Conrad are barred because Plaintiff has alleged no direct involvement on the part of Chief Conrad in the alleged wrongdoing of other LMPD personnel. [DN 7 at 3.] Specifically, Defendants argue that "[i]t has long been established that there is no vicarious liability on the part of a public official for acts of subordinates in which the official was not directly involved." [*Id.* at 3–4] (quoting *Franklin Cty. v. Malone*, 957 S.W.2d 195, 199 (Ky. 1997), *overruled on other grounds by Com. v. Harris*, 59 S.W.3d 896 (Ky. 2001) *and Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001)). According to Defendants, "[t]here are no allegations contained within Plaintiff's Complaint that Chief Conrad was **directly** involved in any action allegedly taken against the Plaintiff" and therefore that vicarious liability does not apply in this case. [*Id.* at 4.] The Court disagrees.

In response, Plaintiff argues that he "has pled, with particularity, that Defendants Conrad and LMPD are liable for the actions of their employees through the doctrine of respondeat superior." [DN 19 at 1.] Specifically, Plaintiff reiterates that his complaint alleges that Chief Conrad, as Chief of Police, "was responsible for the promulgation and implementation of LMPD's policies and practices," and was "responsible for the hiring, retention and supervision

---

[2] It appears Plaintiff alleges *respondeat superior* in addition to direct liability claims against Chief Conrad.

9

of Defendant employees" such as Officer Mudd and other unnamed officers. [*Id.* at 2.] Plaintiff alleges that, after LMPD personnel was told of Plaintiff's thoughts regarding Officer Mudd, they, nor Chief Conrad, made any effort to contact Dr. Sweeny, who they were told was the firsthand recipient of the information.

Plaintiff alleges, further, that Chief Conrad was negligent in investigating the information about Plaintiff by "fail[ing] to follow up on, and consciously disregard[ing], exculpatory evidence which would've established the innocence of the Plaintiff, and prevented the unlawful arrest and detention of the Plaintiff." [*Id.* at 2.] Plaintiff claims that this, along with the fact that the charge of terroristic threatening was dismissed as "insufficient on its face," is "Res Ipsa Loquitur that negligent training and supervision must have taken place." [DN 7 at 2–3.] Finally, Plaintiff argues that "Chief Conrad owed a duty to properly train and supervise the Defendant Officers to conduct a proper police investigation, and w[as] negligent in failing to do so." [DN 19 at 3.] According to Plaintiff, "[h]ad . . . Chief Conrad . . . conducted the[] investigation of the Plaintiff's statement diligently and competently, the unlawful arrest and detention would've been avoided." [*Id.*]

As an initial matter, the Court agrees with Defendants that, under Kentucky law, a claim against a public official must contain some allegation that the official was "directly involved" in the negligent acts of subordinates, otherwise, "there is no vicarious liability" for the public official. *Franklin Cty.*, 957 S.W.2d at 199. *See also Moores v. Fayette Cty.*, 418 S.W.2d 412, 414 (Ky. 1967) ("The rule is that public officers are responsible only for their own misfeasance and negligence and are not responsible for the negligence of those who are employed by them if they have employed persons of suitable skill."). In *Yanero*, the Supreme Court of Kentucky relied on *Franklin County* and *Moores* when analyzing vicarious liability of public employees. 65 S.W.3d

at 527–29. In reliance on those cases, the *Yanero* court held, first, that a board of education could not "be held vicariously liable for any alleged negligence of its employees" because it was not "directly involved in hiring school personnel," and therefore could not be said to have failed to employ "persons of suitable skill." *Id.* at 527–28. The court further held that the athletic director, as a public officer, was "responsible only for [his] own misfeasance and negligence and . . . not . . . for the negligence of those employed by [him] if [he] . . . employed persons of suitable skill." *Id.* at 528. Therefore, the court explained that "there is authority for the proposition that a public officer can be subject to personal liability in tort for hiring an employee known to that officer to be incompetent to perform the task for which he/she was hired." *Id.*

  The Court is therefore persuaded that, here, for Chief Conrad to be liable for any actions of his subordinates, he must have either employed persons he knew to be incompetent for their positions or he must have been somehow directly involved in the alleged negligent acts of his subordinates. Although Plaintiff makes allegations that Chief Conrad failed to adequately hire Officer Mudd and other LMPD personnel (DN 1-1 at ¶¶ 73; 88), it does not appear Plaintiff goes so far as to allege that Chief Conrad knowingly hired personnel whom he knew to be "incompetent." The only remaining question for the Court, therefore, is whether Plaintiff has adequately pled any direct involvement by Chief Conrad in the alleged negligent acts of his subordinates.

  As noted above, Plaintiff argues in his response that, after Hatfield relayed information to the LMPD and provided Dr. Sweeny's contact information, Chief Conrad and other superiors at LMPD were "negligent in their conducting of a police investigation. They failed to follow up on, and consciously disregarded, exculpatory evidence which would've established the innocence of the Plaintiff, and prevented the unlawful arrest and detention of the Plaintiff." [DN 19 at 2.] In

11

essence, Plaintiff alleges that Chief Conrad was directly involved in a negligent investigation conducted by LMPD into the statements made by Plaintiff and reported to them by Hatfield. In his complaint, Plaintiff further alleges that Chief Conrad was directly involved, along with Officer Mudd and "unnamed LMPD officers," in the intentional infliction and negligent infliction of emotional distress upon Plaintiff which occurred as a result of "falsely imprisoning . . . detaining . . . and denying [Plaintiff] proper medical attention for a substantial period of time." [DN 1-1 at ¶¶ 107; 120.] Because it is plausible that Chief Conrad was directly involved in an allegedly negligent investigation of the information Hatfield relayed to LMPD and/or in the subsequent arrest of Plaintiff, the Court finds that Plaintiff has satisfied the minimal pleading requirements as to direct involvement at this stage. Dismissal of the vicarious liability claims against Chief Conrad would accordingly be improper on this ground.

### B. Qualified Immunity

Second, Defendants contend that the claims made against Chief Conrad in his individual capacity must be dismissed on the grounds of qualified immunity. [DN 7 at 4.] The Court disagrees.

> "Official immunity" is immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions. It rests not on the status or title of the officer or employee, but on the function performed. *Salyer v. Patrick,* 874 F.2d 374 (6th Cir.1989) . . . [W]hen sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment. 63C Am.Jur.2d, *Public Officers and Employees,* § 309 (1997). Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.,* those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment, *id.* § 322; (2) in good faith; and (3) within the scope of the employee's authority . . . Conversely, an officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, *i.e.,* one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative,

involving merely execution of a specific act arising from fixed and designated facts.

*Yanero*, 65 S.W.3d at 521–22. The question for the Court, therefore, is whether Chief Conrad's conduct that Plaintiff alleges was wrongful was discretionary in nature, in which case he would be entitled to qualified official immunity, or whether it was ministerial, in which case he would not. Because the Court finds that elements of both discretionary and ministerial functions exist here, viewing the record in the light most favorable to Plaintiff, the dismissal of the claims against Chief Conrad on the grounds of qualified official immunity at this early stage is improper.

Plaintiff alleges that Defendants, including Chief Conrad, "fail[ed] to act as entities in a supervisory role would act in this situation, by failing to perform their duties and by failing to adequately control and supervise Defendant employees." [DN 1-1 at ¶ 122.] In response, Defendants argue that "Conrad's supervisory role, including his role as supervisor over those responsible for the hiring and training of officers, was discretionary in nature," and that "[i]f Chief Conrad was mistaken in his decision making, that is the very essence of the protection afforded by qualified immunity." [DN 7 at 4–5.] Outside of the public school setting, the Supreme Court of Kentucky has "found that supervising the conduct of others is a duty often left to a large degree—and necessarily so—to the independent discretion and judgment of the individual supervisor." *Haney v. Monsky*, 311 S.W.3d 235, 244 (Ky. 2010), *as corrected* (May 7, 2010) (citing *Rowan Cty. v. Sloas*, 201 S.W.3d 469, 480 (Ky. 2006), *as corrected* (Sept. 26, 2006)). However, the court has also held that, when supervising employees involves simply "enforcing known policies," supervision is a ministerial act. *Finn v. Warren Cty., Kentucky*, 768 F.3d 441, 449 (6th Cir. 2014) (citing *Hedgepath v. Pelphrey*, 520 F. App'x 385, 391 (6th Cir. 2013); *Yanero*, 65 S.W.3d at 522).

Indeed, here, Plaintiff states that Chief Conrad, in his position as Chief of Police, "was responsible for the promulgation and implementation of LMPD's policies and practices." [DN 1-1 at ¶ 14.] And while "[p]romulgation of rules is a discretionary function; enforcement of those rules is a ministerial function." *Patton v. Bickford*, No. 2013-SC-000560-DG, 2016 WL 1084150, at *3 (Ky. Mar. 17, 2016), *as corrected* (Apr. 1, 2016) (quoting *Williams v. Kentucky Dept. of Educ.,* 113 S.W.3d 145, 150 (Ky. 2003)). Therefore, to the extent Plaintiff alleges that Chief Conrad failed to adequately hire, train, or supervise LMPD officers or other personnel in conformance with established LMPD policies, this represents a ministerial function. For instance, Plaintiff claims that Chief Conrad failed to supervise LMPD officers' conduct "to ensure their conduct met the standard of ordinary police officers." [DN 1-1 at ¶¶ 73.] This allegation appears to suggest that Chief Conrad failed to adequately *enforce* LMPD policies to ensure officers' compliance with those policies, which represents a ministerial function.

Plaintiff additionally claims that, by failing to adequately investigate the information Hatfield gave the LMPD by, for example, calling Dr. Sweeny, Chief Conrad was "negligent in the[] conducting of a police investigation." [DN 19 at 2.] The Supreme Court of Kentucky has explained that when "investigative responsibilities," have mandatory components, such as who must be interviewed, those responsibilities are ministerial. *Sloas*, 201 S.W.3d at 478. However, investigations, including "police investigations," also involve discretionary responsibilities that arise "[a]fter performing . . . ministerial duties." *Id.* Therefore, there are both discretionary and ministerial elements to investigating information provided to the police. To the extent policies existed requiring further investigation or specific investigatory procedures, the Court agrees this would be ministerial in nature and not entitled to qualified official immunity. On the other hand, if whether to call Dr. Sweeny and whether to pursue Plaintiff following the receipt of the

information from Hatfield was not subject to any set policies or procedures, the investigation would appear to involve solely discretion. Because Plaintiff has alleged that Chief Conrad was responsible for implementing LMPD's policies and practices and that Chief Conrad failed to ensure LMPD officers' conformance with certain police standards, viewing the record in the light most favorable to the Plaintiff, the Court finds that dismissal of the claims against Chief Conrad in his individual capacity on the grounds of qualified official immunity is inappropriate at the 12(b)(6) stage of the litigation.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) [DN 7] is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.


cc:     Counsel of Record