UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:16-cv-00276-TBR

MAKI JUILLERAT                                                                                   PLAINTIFF

v.

UNITED STATES OF AMERICA, *et. al.*                                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Louisville Metro Police Department Officer Greg Mudd's Motion to Dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). [DN 17.] Plaintiff has responded. [DN 18.] Defendant has replied. [DN 21.] Fully briefed, this matter is now ripe for adjudication. For the reasons set forth below, Defendant's motion is **DENIED.**

BACKGROUND

The relevant facts as set out in the complaint [DN 1-1] and taken as true are as follows. Plaintiff Maki Juillerat ("Juillerat") is a United States Army veteran who, in March 2015, was receiving treatment at the Robley Rex Veterans Affairs Medical Center ("RRVAMC") in Louisville, Jefferson County, Kentucky. [DN 1-1 at ¶¶ 2–3; 23.] Juillerat was obtaining treatment for Post-Traumatic Stress Disorder, which was the result of his seventeen years of military service. [*Id.* at ¶ 31.] On or around March 20, 2015, Juillerat had a counseling session with Dr. Mary Sweeny, during which Juillerat and Dr. Sweeny discussed confidential matters, including Juillerat's mental status, judgment and insight, and risk factors. [*Id.* at ¶¶ 32–36.] Additionally, Juillerat and Dr. Sweeny discussed a recent encounter Juillerat had with Louisville Metro Police Department ("LMPD") Officer Greg Mudd during a traffic stop and during which Officer Mudd

1

issued Juillerat a citation. [*Id.* at ¶¶ 37, 40.] During the conversation with Dr. Sweeny, Juillerat reported that he had "'thoughts' of shooting Officer Greg Mudd," but further stated that he did not plan to carry out such a shooting. [*Id.* at ¶¶ 38–39.] Juillerat also informed Dr. Sweeny about an upcoming court appearance that was scheduled as a result of the citation. [*Id.* at ¶ 40.] Juillerat told Dr. Sweeny that if his thoughts "progressed further toward action," he would call emergency services or go to a hospital. [*Id.* at ¶ 41.]

On or around March 27, 2015, Sonny Hatfield, a Veterans Outreach Specialist at RRVAMC, attended a risk management meeting where he learned of Juillerat's statements regarding his thoughts about Officer Mudd. [*Id.* at ¶¶ 5; 42–43.] Upon learning this information, Hatfield sent an email to the LMPD stating "I was made aware after viewing a note that an Officer Mudd was threatened 'to be shot' by a patient at the VA. The person in question is Maki James Juillerat." [*Id.* at ¶¶ 44–45.] On or around March 31, 2015, Hatfield noted the sending of this email in Juillerat's file. [*Id.* at ¶ 46.] Hatfield wrote that he " '[i]nformed Off. Jack that this writer was the second hand report' and he 'did not hear the 'HI' (comment) directly.' " [*Id.* at ¶ 47.] Hatfield additionally provided LMPD with Dr. Sweeny's telephone number and noted this in Juillerat's file as well. [*Id.* at ¶¶ 48–49.] The LMPD did not attempt to contact Dr. Sweeny, however. [*Id.* at ¶ 50.] Also on or around March 31, 2015, Dr. Sweeny made an entry in Juillerat's file stating "Patient never said anything about killing the officer or anybody else," that "He (Patient) said he 'thought about shooting' the cop," but that Juillerat "went on to say he had no intentions of doing this." [*Id.* at ¶¶ 51–54.] Dr. Sweeny also wrote that Juillerat had promised to "go to the ER or call 911 if he felt he was losing control over his impulses to hurt self or others." [*Id.* at ¶ 55.]

On April 2, 2015, Juillerat attended the hearing on his traffic citation, and the next day, on April 3, an electronic arrest warrant was issued charging Juillerat with terroristic threatening. [*Id.* at ¶¶ 56–57.] The arrest warrant was executed on April 5, 2015 by an unnamed LMPD officer, who arrested Juillerat and took him into custody. [*Id.* at ¶¶ 58–59.] Juillerat remained in LMPD custody until being discharged on April 15, 2015. [*Id.* at ¶ 60.] On May 7, 2015, the terroristic threatening charge was dismissed on the merits "on grounds that the charge was 'insufficient on its face to be terroristic threatening.' " [*Id.* at ¶¶ 61–62.]

Plaintiff originally filed the instant tort action in Kentucky state court on or around April 5, 2016. [DN 1.] Among several other defendants, Plaintiff brought suit against Sonny Hatfield and Jamie Watts, employees of the Robley Rex Veterans Affairs Medical Center, a facility operated by the Department of Veterans Affairs. [*Id.*] Pursuant to § 2679(d)(1) of the Federal Employees Liability Reform and Tort Compensation Act of 1988, (the "Westfall Act"), United States Attorney John E. Kuhn, Jr. certified that Hatfield and Watts "were acting within the scope of their employment with the United State Department of Veterans Affairs at the time of the conduct alleged in the complaint." [DN 1 at 2.] Hatfield and Watts were accordingly dismissed from the action, and the United States was substituted as the proper party. [*Id.*] It removed this case to the United States District Court for the Western District of Kentucky on April 16, 2016. [*Id.* at 3.]

## STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir.

2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). When considering a Rule 12(b)(6) motion to dismiss, the court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Iqbal*, 556 U.S at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x. 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

## DISCUSSION

In this action, Plaintiff asserts several state law tort claims against multiple defendants. Against Officer Mudd, Plaintiff asserts claims of negligence, gross negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, and false imprisonment. [DN 1-1 at 11–20.] Of the Defendants who are public employees, including Officer Mudd, Plaintiff asserts his claims against those individuals both in their official and individual capacities. [*Id.* at ¶ 21.]

In the instant motion, Defendant LMPD Officer Greg Mudd ("Officer Mudd" or "Defendant") has moved to dismiss all claims against him on the grounds that Plaintiff has not stated a claim upon which relief can be granted under Rule 12(b)(6). [DN 17.] Defendant argues

> there is simply no set of facts presented in the Complaint that can distinguish a cause of action against Ofc. Mudd. The Complaint states that Plaintiff Maki Juillerat made statements where he thought about shooting Ofc. Mudd over a traffic citation. There are not any facts in the Complaint that premise that the traffic citation was improper. There are not any facts in the Complaint that allege Ofc. Mudd acted in way that would afford the Plaintiff any remedy. Therefore the Compliant is lacking facts that would afford the Plaintiff any relief.

[DN 17 at 2–3.]

In his response, Plaintiff makes several arguments, some for the first time.[1] Plaintiff re-emphasizes the allegations in his complaint and contends they are sufficient to state a claim. [*See* DN 18 at 1–2.] Plaintiff argues that if Officer Mudd wishes to "point[] the finger at another officer and say[] he had nothing to do with Plaintiff's arrest," or argue "that the Plaintiff's allegations against him are false," he must do so through a motion for summary judgment. [DN 18 at 2–3.] Plaintiff claims that at the motion to dismiss stage, however, "it is sufficient . . . that the Plaintiff has, in fact, made those allegations." [*Id.* at 3.] Although the Court notes that Plaintiff's Complaint is perhaps overly broad and, at times, conclusory, the Court agrees with Plaintiff that at this early stage of the litigation, his allegations are sufficient to survive a 12(b)(6) motion to dismiss.

Plaintiff's negligence claim states that "Officer Mudd and unnamed LMPD officers" breached duties they allegedly owed to Plaintiff by failing to follow proper police procedures and

---

[1] Specifically, Plaintiff contends that he has made allegations regarding a lack of probable cause for arrest, intentionally causing Plaintiff to be incarcerated without probable cause, and allegations that Defendant Mudd and other LMPD officers acted in concert to violate Plaintiff's Fourth Amendment rights. [DN 18 at 1–2.] However, Plaintiff asserted no such constitutional claims in his complaint. [*See id.*] The Court, therefore, will not consider such claims in ruling upon the present motion to dismiss. If Plaintiff wishes to seek leave of Court to amend his complaint, he is free to do so.

failing to act as reasonable officers would have acted under the circumstances. [DN 1-1 at ¶¶ 70–71.] Plaintiff's gross negligence claim states that "Defendants LMPD, Chief Conrad, Officer Mudd, and unnamed LMPD officers" further breached their duties to follow proper procedures and act reasonably "by failing to exercise even slight care, and act[ing] in a manner consistent with wanton or reckless disregard for the life and safety of the Plaintiff." [*Id.* at ¶¶ 89–90.] The intentional infliction of emotional distress claim alleges that

> Defendants LMPD, Officer Greg Mudd, unnamed LMPD officers, and Chief Steve Conrad, intentionally and deliberately inflicted emotional distress upon the Plaintiff by falsely imprisoning him, detaining him and denying him proper medical attention for a substantial period of time, actions the Defendants either knew or should have known were likely to cause emotional distress.

[*Id.* at ¶ 107.] Plaintiff also makes a claim for negligent infliction of emotional distress, which alleges that these Defendants "owed a duty to act according to the standard of ordinary care of Police Officers, and to safeguard the constitutional rights of individuals," and that they breached that duty by "falsely imprisoning and unlawfully detaining Plaintiff, and denying requisite medical attention to Plaintiff." [*Id.* at ¶¶ 119–120.] Finally, Plaintiff alleges a claim of false imprisonment, in which he alleges "the Defendants, LMPD, and unnamed LMPD officers acted with the intention of confining the Plaintiffs within fixed boundaries," that the "restraint was wrongful, improper, and without a claim of reasonable justification, authority, or privilege." [*Id.* at ¶¶ 129; 132.]

  The Court cannot say that these factual allegations, when accepted as true, support no "more than the mere possibility of wrongdoing" by Officer Mudd. *Iqbal*, 556 U.S. at 679. Rather, reading the record in the light most favorable to Plaintiff, and drawing all reasonable inferences in his favor, the Court finds that Plaintiff has pled sufficient facts to "raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship, F.S.B.*, 727 F.3d at (quoting

*Iqbal*, 556 U.S. at 678). The Court acknowledges, due to the broad and conclusory nature of many of Plaintiff's allegations, the likelihood that discovery may indeed show that Officer Mudd was not involved in the events leading up to and following Plaintiff's arrest. At this time, however, Plaintiff's claims are sufficient to move forward.

CONCLUSION

For all the foregoing reasons, Defendant's motion to for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) [DN 17] is **DENIED.**

    IT IS SO ORDERED.


cc:    Counsel of Record