UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:16-cv-00276-TBR

MAKI JUILLERAT                                                                                      PLAINTIFF

v.

UNITED STATES OF AMERICA, *et. al.*                                                 DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant United States of America's ("United States" or "Defendant") Motion to Dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim upon which relief can be granted under Rule 12(b)(6). [DN 25.] Plaintiff has responded. [DN 29.] Defendant has replied. [DN 30.] Fully briefed, this matter is now ripe for adjudication. For the following reasons, Defendant's motion to dismiss for lack of subject-matter jurisdiction is **GRANTED IN PART** and **DENIED IN PART**. Defendant's motion to dismiss for failure to state a claim upon which relief can be granted is **DENIED**.

BACKGROUND

The relevant facts as set out in the complaint [DN 1-1] are as follows. Plaintiff Maki Juillerat ("Juillerat") is a United States Army veteran who, in March 2015, was receiving treatment at the Robley Rex Veterans Affairs Medical Center ("RRVAMC") in Louisville, Jefferson County, Kentucky. [DN 1-1 at ¶¶ 2–3; 23.] Juillerat was obtaining treatment for Post-Traumatic Stress Disorder, which was the result of his seventeen years of military service. [*Id.* at ¶ 31.] On or around March 20, 2015, Juillerat had a counseling session with Dr. Mary Sweeny, during which Juillerat and Dr. Sweeny discussed confidential matters, including Juillerat's mental status, judgment and insight, and risk factors. [*Id.* at ¶¶ 32–36.] Additionally, Juillerat and

1

Dr. Sweeny discussed a recent encounter Juillerat had with Louisville Metro Police Department ("LMPD") Officer Greg Mudd during a traffic stop and during which Officer Mudd issued Juillerat a citation. [*Id.* at ¶¶ 37, 40.] During the conversation with Dr. Sweeny, Juillerat reported that he had "'thoughts' of shooting Officer Greg Mudd," but further stated that he did not plan to carry out such a shooting. [*Id.* at ¶¶ 38–39.] Juillerat also informed Dr. Sweeny about an upcoming court appearance that was scheduled as a result of the citation. [*Id.* at ¶ 40.] Juillerat told Dr. Sweeny that if his thoughts "progressed further toward action," he would call emergency services or go to a hospital. [*Id.* at ¶ 41.]

On or around March 27, 2015, Sonny Hatfield, a Veterans Outreach Specialist at RRVAMC, attended a risk management meeting where he learned of Juillerat's statements regarding his thoughts about Officer Mudd. [*Id.* at ¶¶ 5; 42–43.] Upon learning this information, Hatfield sent an email to the LMPD stating "I was made aware after viewing a note that an Officer Mudd was threatened 'to be shot' by a patient at the VA. The person in question is Maki James Juillerat." [*Id.* at ¶¶ 44–45.] On or around March 31, 2015, Hatfield noted the sending of this email in Juillerat's file. [*Id.* at ¶ 46.] Hatfield wrote that he " '[i]nformed Off. Jack that this writer was the second hand report' and he 'did not hear the 'HI' (comment) directly.' " [*Id.* at ¶ 47.] Hatfield additionally provided LMPD with Dr. Sweeny's telephone number and noted this in Juillerat's file as well. [*Id.* at ¶¶ 48–49.] The LMPD did not attempt to contact Dr. Sweeny, however. [*Id.* at ¶ 50.] Also on or around March 31, 2015, Dr. Sweeny made an entry in Juillerat's file stating "Patient never said anything about killing the officer or anybody else," that "He (Patient) said he 'thought about shooting' the cop," but that Juillerat "went on to say he had no intentions of doing this." [*Id.* at ¶¶ 51–54.] Dr. Sweeny also wrote that Juillerat had promised

2

to "go to the ER or call 911 if he felt he was losing control over his impulses to hurt self or others." [*Id.* at ¶ 55.]

On April 2, 2015, Juillerat attended the hearing on his traffic citation, and the next day, on April 3, an electronic arrest warrant was issued charging Juillerat with terroristic threatening. [*Id.* at ¶¶ 56–57.] The arrest warrant was executed on April 5, 2015 by an unnamed LMPD officer, who arrested Juillerat and took him into custody. [*Id.* at ¶¶ 58–59.] Juillerat remained in LMPD custody until being discharged on April 15, 2015. [*Id.* at ¶ 60.] On May 7, 2015, the terroristic threatening charge was dismissed on the merits "on grounds that the charge was 'insufficient on its face to be terroristic threatening.' " [*Id.* at ¶¶ 61–62.]

Plaintiff originally filed the instant tort action in Kentucky state court on or around April 5, 2016. [DN 1.] Among multiple other defendants, Plaintiff brought suit against Sonny Hatfield and Jamie Watts, employees of the Robley Rex Veterans Affairs Medical Center, a facility operated by the Department of Veterans Affairs. [*Id.*] Plaintiff alleges negligence, gross negligence, invasion of privacy, intentional infliction of emotional distress, and negligent infliction of emotional distress. [DN 1-1.]

> Under the Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679 (the "Westfall Act"), the United States is to be substituted in a civil action for money damages brought against a federal employee who is alleged to have committed a common law tort while acting within the scope of his employment. See 28 U.S.C. § 2679(b)(1); *Osborn v. Haley,* 549 U.S. 225, 127 S.Ct. 881, 887–88, 166 L.Ed.2d 819 (2007); *RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1142 (6th Cir. 1996).

*Dolan v. United States*, 514 F.3d 587, 592 (6th Cir. 2008) (quoting *Dolan v. United States,* No. 3:06–CV–208, 2007 WL 784351, at *5–6 (E.D. Tenn. Mar. 13, 2007)). If the United States is substituted, "[t]he litigation is thereafter governed by the FTCA," or the Federal Tort Claims Act. *Id.* (quoting *Dolan*, 2007 WL at *6).

Pursuant to § 2679(d)(1), United States Attorney John E. Kuhn, Jr. certified that Hatfield and Watts "were acting within the scope of their employment with the United State Department of Veterans Affairs at the time of the conduct alleged in the complaint." [DN 1 at 2.] Hatfield and Watts were accordingly dismissed from the action, and the United States was substituted as the proper party. [*Id.*] It removed this case to the United States District Court for the Western District of Kentucky on April 16, 2016. [*Id.* at 3.]

## STANDARD

**I.      Motion to Dismiss Pursuant to 12(b)(1) for Lack of Subject-Matter Jurisdiction**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may assert by motion the defense of "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky,* 381 F.3d 511, 516 (6th Cir. 2004). "A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Gentek Bldg. Prods., Inc. v. Steel Peel Litig.,* 491 F.3d 320, 330 (6th Cir. 2007). In a challenge to the factual basis, however, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case . . . no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 890–91 (3d Cir. 1977)). Therefore, while, "when a Rule 12(b)(6) motion is converted to a Rule 56 motion for summary judgment, the court, upon finding genuine issues as to material facts, must deny the motion; . . . on a Rule 12(b)(1) challenge to subject matter

4

jurisdiction, the court is empowered to resolve factual disputes." *Id.* (quoting *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)). Finally, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Bauer v. RBX Indus. Inc.,* 368 F.3d 569 (6th Cir. 2004).

**II.     Motion to Dismiss Pursuant to 12(b)(6) for Failure to State a Claim Upon Which Relief Can be Granted**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). When considering a Rule 12(b)(6) motion to dismiss, the court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Iqbal*, 556 U.S at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x. 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

DISCUSSION

Defendant United States has moved to dismiss all of Plaintiff's claims against it pursuant to Rules 12(b)(1) and 12(b)(6). [DN 25 at 1.] The Court will "consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

I.    **Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction**

   A.    **Discretionary Function Exception**

Defendant first argues that this Court lacks subject-matter jurisdiction over Plaintiff's claims of negligent hiring, negligent training, and negligent supervision because such claims are within the "discretionary function" exception of the Federal Tort Claims Act. [DN 25 at 4–8 (citing 28 U.S.C. § 2680(a)).]

> The Federal Tort Claims Act ("FTCA") grants district courts
>
> exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). The FTCA further provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674. In short,

> [t]he FTCA waives the federal government's sovereign immunity in limited contexts, and "is the exclusive remedy for suits against the United States or its agencies sounding in tort." *Himes v. United States,* 645 F.3d 771, 776 (6th Cir.2011) (citing 28 U.S.C. § 2679(a)). Under the FTCA, federal district courts

> have jurisdiction over claims against the United States for personal injury or death caused by the "negligent or wrongful act or omission" of any government employee acting within the scope of his employment, "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b)(1)—Kentucky law, in this case.

*Wilburn v. United States*, 616 F. App'x 848, 852–53 (6th Cir. 2015). However, "[t]he FTCA excludes several types of claims from its waiver of sovereign immunity. 28 U.S.C. § 2680. If a case falls within one of these statutory exceptions, the court lacks subject matter jurisdiction over it." *Id.* (citing *Feyers v. United States,* 749 F.2d 1222, 1225 (6th Cir. 1984)).

The first exception Defendant contends applies in this case is the discretionary function exception, which excepts from the government's waiver of sovereign immunity

> [a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). This exception "is broad in scope and places a 'significant limitation on' the FTCA waiver." *Snyder v. United States*, 590 F. App'x 505, 509 (6th Cir. 2014) (quoting *Montez v. United States,* 359 F.3d 392, 395 (6th Cir. 2004)).

> Determining whether a claim falls within the discretionary-function exception involves a two-step test. *See United States v. Gaubert,* 499 U.S. 315, 322–23, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Rosebush,* 119 F.3d at 441. The first step "requires a determination of whether the challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice." *Rosebush,* 119 F.3d at 441 (citing *Gaubert,* 499 U.S. at 322–23, 111 S.Ct. 1267). If there was such a violation of a mandatory regulation or policy, then the discretionary-function exception will not apply, because "there was no element of judgment or choice," *id.,* and thus "the employee has no rightful option but to adhere to the directive." *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988).
>
> If, on the other hand, there was room for judgment or choice in the decision made, then the challenged conduct was discretionary. *See Rosebush,* 119 F.3d at 441. In such a case, the second step of the test requires a court to evaluate "whether the conduct is 'of the kind that the discretionary function exception was designed to shield' " from liability. *Id.* (quoting *Gaubert,* 499 U.S. at 322–23, 111 S.Ct. 1267). The discretionary-function exception is meant "to prevent judicial 'second-

7

>  guessing' of ... administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).

*Kohl v. United States*, 699 F.3d 935, 940 (6th Cir. 2012).

As part of his negligence claim, Plaintiff alleges that Watts "owed a duty of care to hire, train, and supervise the Defendant, Sonny Hatfield, and any unnamed staff of RRVAMC present during or participating in the disclosure of confidentially protected information, and to take steps to prevent the inappropriate disclosure of private healthcare information" and that Watts breached this duty by failing to exercise due care in hiring, training, and supervising Hatfield and other RRVAMC staff. [DN 1-1 at ¶ 66–67.] Plaintiff further alleges that Watts was grossly negligent by failing to exercise even slight care in hiring, training, and supervising Hatfield and other RRVAMC personnel. [*Id.* at ¶ 81.] Additionally, in his negligent infliction of emotional distress claim, Plaintiff alleges that Watts breached a duty to supervise and train Hatfield and other RRVAMC personnel, and that Watts "by failing to act as entities in a supervisory role would act in this situation, by failing to perform their duties and by failing to adequately control and to supervise Defendant employees." [*Id.* at ¶ 118.] In its motion to dismiss, Defendant argues that all allegations of negligent hiring, training, and supervision are barred by the discretionary function exception of the FTCA. The Court agrees.

With regard to the first prong of the discretionary function test, Plaintiff has not alleged that Watts, in hiring, training, and supervising Hatfield and other RRVAMC personnel, "violated a mandatory regulation or policy that allowed no judgment or choice." *Rosebush v. United States*, 119 F.3d 438, 441 (6th Cir. 1997) (citing *United States v. Gaubert,* 499 U.S. 314, 322 (1991)). Rather, it appears the only allegation in Plaintiff's complaint relating to the violation of any policy or procedure was in his allegations that both Watts and Hatfield had a duty to "follow

8

the proper patient confidentiality policies, procedures, and techniques," and that they breached that duty by "[f]ailing to follow standard confidentiality procedures." [DN 1-1 at ¶¶ 64–65.] However, Plaintiff styles his allegations of negligent *hiring, training, or supervision* by Watts as separate from those allegations, and merely claims that Watts failed to adequately hire, train, and supervise Hatfield and other RVAMC staff. [*Id.* at ¶ 67.] Because "Plaintiff failed to allege the United States' nonconformance with any applicable regulations," *Snyder*, 590 F. App'x at 510, or policies that allowed for no "judgment or choice," the Court finds the first prong of the test is satisfied, and therefore finds that Watts was engaged in a discretionary function.

The second prong of the discretionary function analysis requires the Court to consider whether the conduct related to hiring, training, and supervision of employees is of the type intended to be covered by the discretionary function exception, that is, whether the challenged conduct involved some sort of "administrative decisions grounded in social, economic, [or] political policy" that should not be second-guessed by the courts. *Kohl*, 699 F.3d at 940 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)). In other words, "where there is room for policy judgment and decision, there is discretion of the sort protected by Section 2680(a)." *Rosebush*, 119 F.3d at 441 (citing *Dalehite v. United States*, 346 U.S. 15, 36 (1953)). In making this determination, the Sixth Circuit has further explained that "[e]ven where government action is taken on the day-to-day operational level, and implements broader governmental objectives, if that action involves choice or judgment that is 'susceptible to policy analysis,' then it falls within the discretionary-function exception." *Id.* (quoting *Guabert*, 499 U.S. at 325).

Moreover, the Sixth Circuit

> has consistently held that agency supervisory and hiring decisions fall within the discretionary function exception. *See, e.g., O'Bryan v. Holy See,* 556 F.3d 361,

9

>384 (6th Cir. 2009) ("[T]he selection of employees, officials and officers typically falls within the scope of the FTCA's discretionary function exception."); *Carlyle v. United States, Dep't of Army,* 674 F.2d 554, 556–57 (6th Cir. 1982) ("[W]hether or not to supervise [Army recruits] at the Hotel, and the extent of any such supervision, was a planning level, discretionary function."); *see also Zion v. United States,* 913 F.Supp.2d 379, 388–89 (W.D. Ky. 2012) (holding that GSA's hiring and supervisory decisions were discretionary in nature). This conclusion is consistent with the precedent of our sister Circuits.

*Snyder*, 590 F. App'x at 510. Here, although Defendant has not specifically alleged that Watts' conduct in hiring, training, and supervising Hatfield and other RRVAMC personnel involved any "policy judgment and decision," the Court finds that Watts' conduct was certainly "susceptible" to it. When the wrongful conduct alleged in this case occurred, Watts was employed as a supervisor at RRVAMC and Hatfield was employed as a Veterans Outreach Specialist. [DN 1-1 at ¶¶ 4–7.] In hiring, training, and supervising Hatfield as a Veterans Outreach Specialist at a medical center operated by the United States Department of Veterans Affairs, Watts was undoubtedly required to make various policy judgments, and therefore these actions were "the type that Congress intended to shield from tort liability." *Snyder*, 590 F. App'x at 510. Accordingly, the Court finds that the discretionary function exception of the FTCA applies to bar Plaintiff's negligent hiring, training, and supervision claims against Defendant, and those claims are dismissed for lack of subject-matter jurisdiction. Plaintiff's claims of negligence that do *not* allege negligence in hiring, training, and supervision, however, remain.

      **B.**    **State Law Immunity**

Defendant next contends that it is entitled to the protection of a Kentucky statute shielding mental health care professionals from liability. The FTCA subjects the United States to suits only when "a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Here, as the alleged wrongful conduct occurred in Kentucky, Kentucky law applies when determining whether there

is liability under § 1346 of the FTCA. *See id.* Specifically, Defendant argues it is entitled to the protection from liability afforded by Kentucky Revised Statute (KRS) § 202A.400 which provides, in relevant part:

> (1) No monetary liability and no cause of action shall arise against any mental health professional for failing to predict, warn of or take precautions to provide protection from a patient's violent behavior, unless the patient has communicated to the mental health professional an actual threat of physical violence against a clearly identified or reasonably identifiable victim, or unless the patient has communicated to the mental health professional an actual threat of some specific violent act.
>
> (2) The duty to warn of or to take reasonable precautions to provide protection from violent behavior arises only under the limited circumstances specified in subsection (1) of this section. The duty to warn a clearly or reasonably identifiable victim shall be discharged by the mental health professional if reasonable efforts are made to communicate the threat to the victim, and to notify the police department closest to the patient's and the victim's residence of the threat of violence. When the patient has communicated to the mental health professional an actual threat of some specific violent act and no particular victim is identifiable, the duty to warn has been discharged if reasonable efforts are made to communicate the threat to law enforcement authorities. The duty to take reasonable precaution to provide protection from violent behavior shall be satisfied if reasonable efforts are made to seek civil commitment of the patient under this chapter.
>
> (3) No monetary liability and no cause of action shall arise against any mental health professional for confidences disclosed to third parties in an effort to discharge a duty arising under subsection (1) of this section according to the provisions of subsection (2) of this section.

Ky. Rev. Stat. Ann. § 202A.400. In reliance on these provisions, Defendant argues that Plaintiff's claims against it "are founded in his allegation that a VAMC counselor interpreted his claims to his therapist as an actual threat of physical violence against Officer Mudd," and therefore that KRS § 202A.400(3) applies to shield it from liability under Kentucky law. [DN 25-1 at 8.]

Plaintiff makes two arguments in response. First, Plaintiff contends that even if an actual threat were made, the duty to warn would have belonged to Dr. Sweeny, the person to whom it

11

was communicated, rather than to Hatfield, the person who ultimately disclosed Plaintiff's comments to the LMPD. [DN 29 at 3–6.] Second, Plaintiff claims that no actual threat was made within the meaning of KRS § 202A.400. [*Id.* at 5–6.] In its motion and reply, Defendant argues that, as Hatfield was a licensed clinical social worker, which is included in the definition of "mental health professional" as used in KRS § 202A.400, it is sufficient that the alleged actual threat was communicated to him indirectly through Dr. Sweeny. [DN 25-1 at 10–11; DN 30 at 2.] Additionally, Defendant argues that the record sufficiently demonstrates the communication of an actual threat, as Plaintiff stated that he "hates cops" and "made a promise that he would call 911 or check himself into the ER [which] confirms that Plaintiff had not yet disregarded his inclinations regarding Officer Mudd." [DN 30 at 3 (citing DN 29-1, Dr. Sweeny's notes in Plaintiff's records).] Therefore, Defendant maintains that "Hatfield had a statutory privilege to reveal these threats to local law enforcement." [*Id.* at 4.]

In *Devasier v. James*, the Supreme Court of Kentucky interpreted "the meaning of 'communicated to a mental health professional;' [and] the meaning of 'an actual threat' " as used in KRS § 202A.400(1). *Devasier v. James*, 278 S.W.3d 625, 630 (Ky. 2009). First, the court interpreted the phrase "communicated to a mental health professional" as "includ[ing] threats communicated by a patient directly to a mental health professional, and threats communicated by a patient to the mental health professional indirectly through agents or ostensible agents of that professional who have a duty to relay the patient's information." *Id.* at 631. In its analysis of the term "actual threat," the *Devasier* court stated that "a threat is 'actual' when it exists in fact, is real and genuine, as opposed to a vague or uncertain indication of a potential harm, or a statement made in jest or obvious exaggeration." *Id.* The court further explained that

> [b]y using the word "communicated," we believe the legislature intended to require a current, active expression, by words or gestures, verbal or non-verbal, to

12

> the professional; a threat capable of avoidance, not a mere passive presence from which the professional must attempt to discern if a patient poses a threat of harm. A part of the obvious purpose of the statute, because subsection (3) addresses it, is to strike a balance between the ethical duty of the mental health professional to protect a patient's confidentiality and the moral duty to prevent harm to others. The legislature did so by requiring disclosure of threats "communicated" by a patient, not threats posed by a patient. Thus, we hold that the duties described in KRS 202A.400(2) arise only when the patient has communicated to the mental health professional, directly or indirectly, by words or gestures, that he will commit an act of physical violence.

*Id.* at 632.

### 1) Communicated to a Mental Health Professional

The Court is persuaded that, because Hatfield was a licensed social worker, which is a "mental health professional" as defined in KRS § 202A.400(4)(a)(5), and the information regarding Plaintiff's statements to Dr. Sweeny was ultimately relayed to Hatfield at "a risk management meeting in regard to potential harmful behavior of various Veteran patients," [DN 1-1 at 9], Plaintiff's statements were "communicated to a mental health professional" as contemplated by KRS § 202A.400. Specifically, the *Devasier* court held that this phrase includes "threats communicated by a patient to the mental health professional indirectly through agents or ostensible agents of that professional who have a duty to relay the patient's information." *Devasier*, 278 S.W.3d at 631. Therefore, although Hatfield may have received this information indirectly, this is sufficient for KRS § 202A.400 purposes.

### 2) Actual Threat

The Court finds the question of whether what Plaintiff communicated to Dr. Sweeny constituted an "actual threat," however, to be less clear. The *Devasier* court specifically noted the purpose of KRS § 202A.400(3) as being to "strike a balance between the ethical duty of the mental health professional to protect a patient's confidentiality and the moral duty to prevent

13

harm to others." *Id.* at 632. The parties each reference the notes Dr. Sweeny made regarding Plaintiff's statements. Dr. Sweeny wrote, in relevant part:

> He reported both suicidal and homicidal ideation. Said his thoughts of suicide have progressed to thinking of how he would do it. he said he would probably run his car off the road or crash into a tree or something similar. This would make it less obvious as a suicide and preserve some "honor." Said he should have died overseas "because that would have been honorable." The pt. also reported "he already hates cops" and he recently was ticketed by a cop named Officer Mudd. The pt. said he thought about shooting the cop because he viewed him as unfair and inconsistent. He hasn't planned it out any further than thinking of shooting him but has to go to court on April 2. The pt. said he would make me the same promise he made Dr. Chopra that he would call 911 or go to ER if he thinks he can't control his impulses to hurt self or others.

[DN 29-1.][1] Defendant argues this was sufficient to constitute an "actual threat" such that Hatfield could disclose it "in an effort to discharge [his] duty" under KRS § 202A.400(2). [DN 25-1 at 9–10 (quoting KRS § 202A.400(3)).] Defendant further claims the "in an effort" language was intended to allow mental health professionals to have less than "an absolute understanding of a patient's intent before discharging the duty to protect the third party." [DN 25-1 at 9–10.] On the other hand, however, the Court is mindful that the *Devasier* court emphasized that "the duties described in KRS 202A.400(2) arise *only* when the patient has communicated to the mental health professional, directly or indirectly . . . that he *will* commit an act of physical violence." *Devasier*, 278 S.W.3d at 632 (emphasis added).

Because the Court finds that there are both facts tending to suggest that Plaintiff communicated an actual threat, in which case immunity under § 202A.400 would apply, and facts tending to suggest that he did not, in which case immunity would not apply, the Court finds a determination of this issue at this early stage of the litigation to be improper. Discovery on this

---

[1] While Plaintiff also references an addendum Dr. Sweeny made after Hatfield disclosed Plaintiff's statements to the LMPD clarifying that Plaintiff "never said anything about killing the officer or anybody else. He said he 'thought about shooting' the cop and then went on to say he had no intentions of doing this," [DN 29-4], the Court will limit its analysis at this time to the information Hatfield had at the time he made the disclosures to the LMPD.

issue may better put Plaintiff's communication in context, and is therefore warranted. Accordingly, viewing the record in the light most favorable to Plaintiff, a finding that KRS § 202A.400 shields the United States from liability, and dismissal of the claims against it on those grounds, is improper at this time.

      C.      **Libel and Slander Exception**

Last, Defendant argues that all of Plaintiff's claims effectively arise out of allegations of libel or slander, another exception to the FTCA's waiver of sovereign immunity, and therefore that all of Plaintiffs claims must be dismissed on that basis. [DN 30 at 4–5.] The "libel and slander" exception to the FTCA's waiver of sovereign immunity provides that such immunity is not waived with respect to "**(h)** Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, *libel, slander*, misrepresentation, deceit, or interference with contract rights . . ." 28 U.S.C. § 2680(h). In reliance on this provision, Defendant contends that " 'false light' invasion of privacy claims essentially amount to libel, slander, or misrepresentation" and are therefore barred under the FTCA. [DN 25-1 at 11.]

Although it appears the Sixth Circuit has not addressed false light invasion of privacy claims as being included in the libel and slander exception, many other circuits have. The Fifth Circuit, in *Johnson v. Sawyer*, agreed with the district court's statement that a claim of false light invasion of privacy arising from information disclosed in a press release, although not a recognized cause of action under Texas law, nonetheless "essentially amounts to libel, slander, or misrepresentation" and therefore "would be exempted from the FTCA." *Johnson v. Sawyer*, 47 F.3d 716, 732 n. 34 (5th Cir. 1995).

The Eleventh Circuit, too, in addressing a plaintiff's claim that allegedly false statements made by government officials placed him in a false light in the public eye, concluded that the

15

"government officials' allegedly slanderous statements are essential to Mr. Metz's action for false light privacy . . . There is no other governmental action upon which th[is] claim[] could rest. Th[is] claim[], therefore, "arise[s] out of" slander for the purposes of § 2680(h) and [is] not actionable under the FTCA." *Metz v. United States*, 788 F.2d 1528, 1535 (11th Cir. 1986). The *Metz* court concluded "a cause of action which is distinct from one of those excepted under § 2680(h) will nevertheless be deemed to 'arise out of' an excepted cause of action when the underlying governmental conduct which constitutes an excepted cause of action is 'essential' to plaintiff's claim." *Id.* at 1534 (citing *Block v. Neal,* 460 U.S. 289 (1983); *Kosak v. United States,* 465 U.S. 848 (1984); *United States v. Shearer,* 473 U.S. 52 (1985)). In *Metz*, because the alleged falsity of the statements was "essential" to plaintiff's claims, the court concluded that it arose out of libel or slander within the meaning of § 2680(h). *Id.* at 1535. *See also Cadman v. United States*, 541 F. App'x 911, 913–14 (11th Cir. 2013) (Addressing "whether [plaintiff's] alleged false light/invasion of privacy and negligence claims are barred by § 2680(h)" and concluding that because "the allegedly tortious actions here are based on 'statements, representations, or imputations,' and there is no other independent government action on which [plaintiff's] claims can rest . . . [plaintiff's] claims come within, and are barred by, the libel-slander-misrepresentation exemption of the FTCA."

The District of Columbia Circuit, although not as explicitly as the Fifth and Eleventh Circuits, has also indicated that claims of false light invasion of privacy fall under the libel and slander exception. *See Wuterich v. Murtha*, 562 F.3d 375, 378, 381 (D.C. Cir. 2009) (noting that claims of "libel, invasion of privacy/false light, and republication of defamatory statements by third parties" are barred as "fall[ing] within the FTCA's exception for claims 'arising out of ... libel [or] slander.' " Additionally, the Ninth Circuit, although not in the specific context of a

false light invasion of privacy claim, has declined to allow plaintiffs to "fashion . . . slander and libel claims into a claim for negligent infliction of emotional distress by saying the officials were negligent in not foreseeing the effect of their slander in causing emotional distress." *Thomas-Lazear v. F.B.I.*, 851 F.2d 1202, 1206 (9th Cir. 1988). In other words, because "the Government's actions that constitute[d] a claim for slander [we]re essential to [the plaintiff's] claim for negligent infliction of emotional distress," that claim was barred by the libel and slander exception. *Id.* at 1207.

The task for this Court, therefore, is to determine whether Plaintiff's claims against the United States in this case, in essence, "arise out of" libel, slander, or misrepresentation such that they are barred by § 2680(h). The remaining claims Plaintiff alleges against the United States include negligence, gross negligence, false light/invasion of privacy, intentional infliction of emotional distress, and negligent infliction of emotional distress. [DN 1-1.]

As an initial matter, the Court agrees with Defendant that Plaintiff's claim of false light/invasion of privacy is barred by the libel and slander exception of § 2680(h). That claim, titled broadly "Invasion of Privacy" in the complaint, alleges that Hatfield and Watts breached a duty to protect Plaintiff's confidential information, that the information disclosed to the LMPD was private, that a reasonable person would consider the disclosure of such private information highly offensive, that it was not of legitimate public concern, and that the disclosures "placed Plaintiff in a false light and subjected him to criminal prosecution." [DN 1-1 at ¶¶ 96–100.] Additionally, Plaintiff alleged that Hatfield and Watts had knowledge of the falsity of the disclosed statements or acted in reckless disregard to the falsity of them and the false light in which Plaintiff would be placed. [*Id.* at ¶¶ 101–102.]

Under Kentucky law, there are two elements to a false light invasion of privacy claim. It must be that "(1) the false light in which the other was placed would be highly offensive to a reasonable person, and (2) the publisher had knowledge of, or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other was placed." *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 888 (Ky. 1981) (citing Restatement (Second) of Torts, § 652E (1976)). Additionally, under Kentucky law, to maintain a defamation action, "whether for slander or libel," four basic elements must be shown: "(1) defamatory language; (2) about the plaintiff; (3) which is published; and (4) which causes injury to reputation . . . Defamatory actions which imply that the plaintiff committed crimes have been held to be actionable." *McBrearty v. Kentucky Cmty. & Tech. Coll. Sys.*, 262 S.W.3d 205, 213 (Ky. Ct. App. 2008) (internal citations omitted).

Based upon the foregoing, the Court agrees that Plaintiff's false light invasion of privacy claim against Defendant is a claim "arising out of" libel or slander and therefore is excepted from the United States' waiver of immunity for tort actions under the FTCA. Plaintiff's false light invasion of privacy claim, at its core, alleges that Hatfield and Watts published confidential matter, [DN 1-1 at ¶ 114], about Plaintiff, that placed him in a false light and led to criminal prosecution, [*Id.* at ¶ 100], that those statements were false, and that Hatfield and Watts were either aware of such falsity or acted in reckless disregard to it. [DN 1-1 at 101–102.] In his response, Plaintiff specifically argues that "Hatfield . . . communicated a false statement to the police that Plaintiff 'threatened' an officer." [DN 29 at 6–7.] These allegations mirror, in essence, those required to state a claim for defamation under Kentucky law. Therefore, the Court agrees with Defendant that "Plaintiff's Invasion of Privacy claim should be dismissed" as within the libel and slander exception of the FTCA. [DN 25-1.]

However, the Court disagrees with Defendant that "all of [Plaintiff's] claims of harm against the United State arise from the tort of defamation" and therefore all must be dismissed pursuant to § 2680(h). [DN 30-1 at 4.] While the invasion of privacy claim hinges on the publication of false statements concerning Plaintiff that ultimately subjected him to criminal prosecution, the remaining claims of negligence, gross negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress do not make the same core allegations. Specifically, in his negligence and gross negligence claims, Plaintiff alleges that Hatfield and Watts breached their duties of care by "failing to follow standard confidentiality procedures," [DN 1-1 at ¶ 65], and failing to adequately "ensure the Plaintiff's privacy and safety." [DN 1-1 at ¶ 82.] Plaintiff's intentional infliction of emotional distress claim alleges that Hatfield and Watts "intentionally and deliberately inflicted emotional distress upon the Plaintiff by invading his reasonable expectations of privacy, and disclosing his confidential statements to LMPD, actions that the Defendants either knew, or should have known, were likely to cause emotional distress." [*Id.* at ¶ 106.] Finally, the negligent infliction of the emotional distress claim alleges that Hatfield and Watts breached a duty "to safeguard the privacy rights of Plaintiff" by "disclosing Plaintiff's confidential patient information." [DN 1-1 at ¶¶ 115–16.]

At their core, each of Plaintiff's remaining claims appear to emphasize Hatfield and Watts' failure to follow proper *confidentiality* procedures as was allegedly required by their positions as medical professionals, rather than the alleged publication of defamatory statements. While the Court recognizes that each of these claims share the same common wrongful "act," that is, the disclosure of Plaintiff's statements to the LMPD, the false light invasion of privacy claim, unlike the remaining claims, emphasizes the falsity of the claims and the false light in which Plaintiff was allegedly placed. The remaining claims, by contrast, allege the breach of a

19

duty to keep confidential medical information confidential. The Court is persuaded that a distinction exists here and therefore that Plaintiff's remaining claims are not barred by the libel and slander exception of § 2680(h).

II.     **Defendant's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted**

Plaintiff's remaining claims over which this Court has subject-matter jurisdiction include negligence, gross negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. Although Defendant, in its motion, additionally moved to dismiss Plaintiff's claims pursuant to 12(b)(6), and included the standard for dismissal on those grounds, Defendant made no arguments in support of 12(b)(6) dismissal. Rather, Defendant confined its arguments to dismissal for lack of subject-matter jurisdiction. Therefore, this Court construes the Defendant's motion as, in reality, one solely for dismissal on 12(b)(1) grounds, which the Court has addressed above. Accordingly, Defendant's motion to dismiss pursuant to Rule 12(b)(6) is denied.

CONCLUSION

For all the foregoing reasons, Defendant's motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) is **GRANTED IN PART** and **DENIED IN PART**. Defendant's motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) is **DENIED**.

IT IS SO ORDERED.

cc:     Counsel of Record